LAW OFFICES OF
# JEFFREY LICHTMAN
11 EAST 44ᵀᴴ STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
JASON GOLDMAN

PH: (212) 581-1001
FX: (212) 581-4999

December 29, 2021

**BY ECF**
Hon. Laura Taylor Swain
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: <u>United States v. Constantinescu, et al.</u>, 19 CR 651 (LTS)

Dear Chief Judge Swain:

### A. INTRODUCTION

This letter is submitted on behalf of defendant Theofrastos Lymberatos in anticipation of his January 12, 2022 sentencing. With this letter, the defendant respectfully requests a lenient sentence, which is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The basis for this request is as follows: *first*, Mr. Lymberatos has unconditionally accepted responsibility for his criminal conduct, with counsel being instructed to negotiate a guilty plea upon being retained in this case; *second*, a below guidelines sentence would be consistent with the sentences received by his codefendants; and *third*, a review of the defendant's life finds that there are many good deeds and legitimate employment, and the prospects for his rehabilitation are therefore very good.

### B. THE DEFENDANT'S GUILTY PLEA
    AND RESULTING GUIDELINES RANGE

On June 2, 2021, Mr. Lymberatos pleaded guilty pursuant to a plea agreement to Count Two of a four count Indictment which charged him with Conspiracy to Commit Wire and Bank Fraud, in violation of 18 U.S.C. § 1349. See April 26, 2021 Plea Agreement ("Plea Agreement") at p. 1. Mr. Lymberatos faces no statutory minium and a maximum sentence of 30 years imprisonment. Id.

JEFFREY LICHTMAN

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 2

As recounted in the PSR, pursuant to U.S.S.G. § 2X1.1(a), the applicable Guideline for Count Two is § 2B1.1, which sets the base offense level at seven. PSR at ¶ 61; U.S.S.G. § 2B1.1(a)(1). With a loss between $1.5M and $3.5M, specifically $3,431,062.72, 16 levels are then added, and because the offense involved ten or more victims, another two levels are added. PSR at ¶¶ 62, 63. Finally, as the offense involved the possession of device making equipment, a final two levels are added. PSR at ¶ 64. With three levels subtracted for acceptance of responsibility (U.S.S.G. § 3E1.1), the total offense level becomes 24, carrying an advisory sentencing range in the Criminal History Category I[1] of 51 to 63 months imprisonment. PSR at ¶¶ 71-72, 147.

    C.    **THE DEFENDANT'S BACKGROUND AND THE NATURE OF THE OFFENSE – APPLICATION OF § 3553(a) FACTORS**

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18 U.S.C. §3553(a)(1)-(2) (emphasis supplied). In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1). With these aims in mind, we offer the following for the Court's consideration.

---

[1] The Plea Agreement placed the defendant in Criminal History Category II, finding that he committed the instant offense while under a criminal justice sentence, specifically, conditional discharges imposed in February 2013 and April 2015 as part of two second degree criminal contempt convictions in Queens, New York. As the PSR correctly points out, however, these two convictions could not have been utilized to assess criminal history points because they were not countable pursuant to U.S.S.G. § 4A1.2. See Application Note 4, U.S.S.G. § 4A1.1; PSR at ¶ 148.

JEFFREY LICHTMAN

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 3

### i. Mr. Lymberatos' Co-Defendants

As of the date of this letter, 11 of the 29 defendants in this case have been sentenced and except for the three defendants with mandatory 24 month periods of incarceration,[2] each has received a below guidelines sentence from this Court. Indeed, the eight defendants subject to discretionary sentences received on average a period of incarceration equal to 72.25% of the bottom of their guidelines range – and applying this figure to Mr. Lymberatos' 51-63 month range would result in a sentence of less than 37 months imprisonment. Further, defendant Robert Duczon received a 22 month sentence, some 53% of the bottom of his 41 to 51 month range. Granting a similar variance to Mr. Lymberatos would result in a sentence of 27 months imprisonment – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ disparities among defendants with similar records who have been found guilty of similar conduct"); Freeman v. United States, 131 S. Ct. 2685, 2694 (2011) (Sentencing Reform Act "aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences").

### ii. The History and Characteristics of the Defendant

We have attached nearly 30 character letters in support of this submission, reflecting the significant and meaningful role that Mr. Lymberatos has played in the lives of friends, family members and coworkers. It would be impossible to include a letter from every individual whom the defendant has positively influenced.[3] Still, the myriad letters on which we do remark paint a consistent picture of a man who "put[s] others first," (Letter of Eleni Stamatakos, attached as Exhibit 1) is "very caring," (Letter of Dimitrios Rammos, attached as Exhibit 2) and remains a "great father to his children." Letter of Amy Fuentes, attached as Exhibit 3; see also July 6, 2021 Letter of M.L., attached as Exhibit 4 ("caring, loving and very supportive"). Additionally, several of the letters note the sincere regret that the defendant has expressed for his criminal conduct. Letter of Armen Kalajian, attached as Exhibit 5 ("truly regrets his decisions"); see also October 5, 2021 Letter of Mary Troumouhis, attached as Exhibit 6; Letter of Angeleke

---

[2] Specifically, defendants Diaconu, Anca and Vaduva pleaded guilty solely to violations of 18 U.S.C. § 1028A, which provides for a 24 month period of incarceration to be served consecutively to any other count of conviction. As the sole counts of conviction, each were sentenced to 24 months imprisonment.

[3] Additional character letters in support of Mr. Lymberatos are collected and attached to the end of this submission as Exhibit 25.

sentencing, many of Mr. Lymberatos's exceptionally good deeds probably would have gone unrecognized.



**JEFFREY LICHTMAN**

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 5



### A Dedicated Family Member

Nearly every letter submitted on behalf of Mr. Lymberatos observed his dedication to his family members, especially his children, including his son Tristen, whom he adopted when he was three months old. Tristan, who is now 19 and lives with Mr. Lymberatos' parents, explains in his letter to the Court:

> My biological father was never there for me not even since I was born. Theofrastos was 19 years old when he met my mother, and he took the role as my father and raised me since I was 3 months old. He has 3 biological kids and I've never once felt as though he loved me any less than his other kids. Even after the divorce to my

**JEFFREY LICHTMAN**

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 6

> mother, he was there for me not only as a father, but a dad that never turned his back on me.

December 14, 2021 Letter of Tristen Fuentes, attached as Exhibit 12; see also July 10, 2021 Letter of Efrosine Sullivan, attached as Exhibit 13 ("When Theo got married to his wife, she had a toddler, Tristen. ... Theo was the proud young loving father of all [the children].").

Tristan's mother, Amy Fuentes, confirms that the defendant "t[ook] on fatherhood [for] [her] little boy Tristan," adding: "Till this day he has never left my son's life and continues to emotionally[,] physically and financially be there for him. ... He always treated him as his own[,] never ever different." Letter of Amy Fuentes, Ex. 3. Regarding their other children, and despite their divorce, Ms. Fuentes writes: "I married him for a reason. He was an amazing husband [and] ... a great father to his children." Id.; see also Ltr. of A.L., attached as Exhibit 14 ("He put my brother into basketball and soccer. He used to take us to our games, practices, places we wanted to go, and things we wanted to do.").

In addition to his children, there appears to be no end to the cousins, nieces, nephews, and other extended family members heaping praise on the defendant's efforts to assist them in their time of need. For example, Kristina Troumouhis, a cousin, recalls for the Court:

> The thing that sticks out most in my mind is when Theo went above and beyond about 4 years ago for my family. My father was diagnosed with lung cancer in August 2017, I was then diagnosed with breast cancer in March 2018, all while my brother was battling addiction. My father owned cafes in 3 office buildings and one in a hospital, and when we had nowhere to turn to because my dad was too sick, my mom was taking care of him, I was going through treatments and my brother was in rehab, Theo stepped up without hesitation. He would come early in the morning to do the shopping for the stores then go back and make sure everything was being run properly. He never accepted any compensation or hesitated to jump when we called. Because of his actions, we were able to keep the businesses afloat while dealing with everything until Covid forced us to shut down. When my dad passed away in May 2018, Theo continued to be there for us. This shows the type of person he is. He is always there to lend a helping hand to those he cares about. He is a dedicated father to not only his own children, but also raised his wife's son as his own. He is a loving father, brother, son, uncle, cousin and friend.

October 5, 2021 Letter of Kristina Troumouhis, attached as Exhibit 15. Kristina's mother, Mary Troumouhis echoes:

> Theo was there for me when I needed him most and would drop whatever he was doing and come to my assistance. As I was taking care of both my husband and daughter who were both battling cancer, Theo would come make sure that our businesses were being tended to. Without him, I believe we would have had to close our doors, especially after my husband passed since I had no experience running a food service establishment. I am forever grateful to him for that.

Ltr. of Mary Troumouhis, Ex. 6. And when his father was terminally ill, cousin Nicholas Protopapadakis recalls: "Theo was there for me from his diagnosis to me holding my dad while he took his last breath. ... I still am grateful to have a person like him in my life." July 8, 2021 Letter of Nicholas Protopapadakis, attached as Exhibit 16.

Another cousin, Antonio Troumouhis, details his experiences with the defendant, writing:

> After 9/11, I was around 19, I moved to Delaware and Theo and I lost touch for several years. When my first son was born over 11 years ago, my wife and I fell on hard times. She lost her job and the house we were renting was sold to new owners who didn't want us there. Theo drove down to Delaware from New York, just to deliver some Christmas presents for our son and a small gift of money to put a deposit down on a new apartment.

Ltr. of Antonio Troumouhis, Ex. 8. Of her experiences with the defendant after her parents divorced when she was a child and she moved in with Mr. Lymberatos' family, cousin Melina Allende recalls:

> He has a made a huge impact in my life, and how I have overcome many obstacles I faced. His persistence and consistency with being an active role model in my life led me down the right path. I am currently a [s]pecial [e]ducation teacher. I hold a Master of Arts degree in Educational Technology, and I am also enrolled in a doctoral program for [e]ducational [l]eadership. Mr. Lymberatos has always told me how proud he is of my accomplishments, and how I continue to prosper in my life. He advised me to never give up my dreams.

June 8, 2021 Letter of Melina Allende, attached as Exhibit 17.

      Mr. Lymberatos brother-in-law, Panagiotis Niarhos, recalls for the Court when he was the recipient of the defendant's good will in his time of need:

> He was also a strong support system for me and my wife when we were experiencing trouble in conceiving a child. He would talk to his sister and cheer her up providing inspiring words of motivation for the both of us during this trying period in our life. He made every effort to be there for us. Through all of our trying times his words moved us and motivated us until we finally were able to conceive a child of whom he adores deeply. Just as he adores my son, my son also adores him just as much.

Ltr. of Panagiotis Niarhos, Ex. 11. Panagiotis' wife, Angeleke, confirms this take, adding in her own words:

> I was unable to have children for a long time and my brother Theo was the most amazing support system after my husband. He would call and check on me all the time, after my third failed IVF, I was so devastated and couldn't get out of bed because I couldn't stop crying, it was my brother that came to my house after my husband called him. I will never forget his words, "Kiki, you will have a child of your own because God sees how much love you give my kids and what an amazing aunt you are to your nieces and nephews." He gave me hope and would call me in the mornings at 6:45 am on my way to work because he knew from my husband that mentally I couldn't get out of bed because the pain was too immense. He would call me and give me pep talks and make me laugh the conversations lasted 2 minutes but I will forever be grateful to him. My brother has a heart of gold and will do anything for his family and he showed me this when I went through the most devastating time in my life. I now have a 5 year old miracle and he adores my brother Theo.

Ltr. of Angeleke Lymberatos-Niarhos, Ex. 7.

      The defendant's aunt, Efrosine Sullivan, adds that he is "[a]lways eager to generously help anyone in need whether ... in Greece, or the States. Helping the elderly relatives, or

JEFFREY LICHTMAN

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 9

neighbors by going to the store for them. [F]ix[ing] things that [are] broken such as plumbing [and] chang[ing] light bulbs." Ltr. of Efrosine Sullivan, Ex. 13. Similarly, cousin Mary Floratos notes of her experiences with the defendant:

> Theo was always deferential to my parents, his great aunt and uncle, and always was helpful in the house with chores and pulling his weight. Often Theo made it his job to help my mother with difficult tasks at church–climbing ladders, carrying and lifting, in addition to other small handy-man tasks. Theo was always so proud to tell others how he helped his Aunt Maureen. One specific time I remember was how happy he was when he helped with hanging the holiday wreaths. At services that year, I can remember how he beamed when my mother told people how her great nephew helped her, and she could not have done it without him.

July 6, 2021 Letter of Mary Floratos, attached as Exhibit 18; see also Letter of Anathasios Lymberatos, attached as Exhibit 19 ("He would ... look out for his family and was always quick to offer his help whenever someone needed it").

Describing the defendant as "the older brother I never had," cousin Despina Levantis recalls when Mr. Lymberatos was there for her in the midst of her abusive relationship with a boyfriend:

> I remember myself talking to Theo about my first relationship I created when I moved here back in 2004. I was young at the time only 18 years old. I fell madly in love with that boy then, so I decided to introduce him to Theo. I was very excited and enthusiastic about it. The moment my cousin met him he turned around and told me "Deb, I love you like my little sister and I gotta tell you this kid isn't for you, you deserve better trust me," at that point I could not understand what he was talking about but sooner or later I started to see what he was seeing. My relationship was not making happy at all, quite the opposite, I became very anti-social, always crying and feeling upset and I had to put a restraining order against him. The 1st person I called was Theo. When he picked up my phone call I was crying and he said, "Debs what's wrong, why you crying?" I told him what was going on and within minutes he was outside my house in Whitestone Queens. He picked me up and came with me to the 109th Precinct to file a report.

**JEFFREY LICHTMAN**

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 10

> I was able to see in his eyes that he was worried about me, he was able to feel my fear, but he did not say to me, so I will not get more scared. Without me realizing that night after he dropped off back home Theo did not leave my house. <u>He stayed parked outside all night. Stayed in his car making sure that crazy boy did not come near the premises, and he continued watching over me without me knowing by driving behind me to and from work, he was there for me and my safety</u>. That was a very hard time for me back then and I had my cousin's love, support, and shoulder to lean on.

Ltr. of Despina Levantis, attached as Exhibit 20. And after 9/11, the defendant's sister recalls that he bicycled from Queens to Manhattan to find her after he was informed that she was walking home after her train had stalled underneath one of the collapsed towers. Letter of Oreanthe Lymberatos, attached as Exhibit 21 ("He put my well-being above his own safety").

<u>A Loyal Friend and Helpful Coworker</u>

In addition to multiple letters received by family members, Mr. Lymberatos has also made a strong and lasting impression on friends and coworkers. For example, Alan Brani praises:

> I first met Theo in the winter of 2009. I just moved here from Detroit with nothing more than my car, clothes and a will to succeed. I started a new job installing water meters for company that had a DEP contract in NYC. This was a very overwhelming experience for me. He taught me the ropes about the job, NYC and also about building personal character. Theo has always pushed me to do my best, "Strive for Excellence" is something I heard every morning in the work truck. He was the first positive influence that I had coming to New York City.

Letter of Alan Brani, attached as Exhibit 22; <u>see also</u> Letter of Eleni Stamatakos, Ex. 1 ("dear friend .... one of the most loyal people I know").

Regarding his overseeing the defendant while he was employed with VEPO Solutions installing water meters, Robert Paine hails:

> Theo joined our crew in April/May of 2021 and quickly integrated himself into our team of 10+ technicians. He is now our top producer and has positively separated himself from his peers. This was done by his focus on consistency, communication and never

**JEFFREY LICHTMAN**

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 11

> making excuses. Throughout my time as a project lead many "new" technicians show up and can string together a few good days, weeks or maybe even a month or 2. It's physically demanding and at times frustrating work that can wear an individual down. Theo is the exception. He has outperformed his peers in most all categories and does it every day with a smile on his face. He's been an absolute pleasure to work with and is this team's "glue guy" ... an individual that can unite, motivate and deliver results day in and day out.

Letter of Robert W. Paine, attached as Exhibit 23; see also Ltr. of Dimitrios Rammos, Ex. 2 ("tremendous coworker and friend"). Similarly, VEPO Solutions co-worker Tom Moore notes:

> While I recognize that Theo has been convicted of a very serious crime that shouldn't be downplayed in any way, his colleagues and I can paint a very different picture for you. I don't mean to go off on a tangent but working in the water meter business means you spend time on the road frequently. The bad news is you spend time away from your family, friends, and loved ones – the good news is you work very closely with your colleagues. Theo has always displayed humility, respect, and integrity throughout his whole tenure in the water meter business. <u>While some people just keep quiet and to themselves, Theo is the guy lending a helping hand to each of his teammates</u>.

July 21, 2021 Letter of Tom Moore, attached as Exhibit 24 (emphasis supplied).

**JEFFREY LICHTMAN**

Hon. Laura Taylor Swain
Chief United States District Judge
December 29, 2021
Page 12

### D.    CONCLUSION

Defendant Theofrastos Lymberatos comes before this Court asking for mercy. A life filled with good deeds and hard work has been marred by his criminal actions. Nevertheless, as the powerful enclosed letters reveal, Mr. Lymberatos is a decent and giving man who unlike many defendants has made efforts to help friends, family, and others throughout his life, when no one was watching, when he had no need to impress a judge deciding his fate. For these reasons and the others stated herein, a lenient sentence is respectfully requested.

Respectfully submitted,

Jeffrey Lichtman

Encs.

cc:   Robert Sobelman, Esq.
      Samuel Rothschild, Esq.
      Elizabeth Hanft, Esq.
      Assistant United States Attorneys (by ECF & email)